**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAMIEN KASLYN, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 22 C 3449 |
| CITY OF YORKVILLE, *et al.*, | ) | Chief Judge Virginia M. Kendall |
| *Defendants*. | ) | |

**OPINION AND ORDER**

Plaintiff Damien Kaslyn ("Kaslyn") filed this nine-count action against three police officers — Brendan Heye ("Officer Heye"), Daniel Slocum ("Officer Slocum"), and Sara Gerlach ("Officer Gerlach") — and the United City of Yorkville ("Yorkville"), bringing civil rights, state law battery, indemnification, and respondeat superior claims. (Dkt. 43). Kaslyn brought a claim against Officer Heye (Count I), Officer Slocum (Count III), and Officer Gerlach (Count V) under 42 U.S.C. § 1983. (*Id.*) Kaslyn also brought three state law battery claims against Officer Heye (Count II), Officer Slocum (Count IV), and Officer Gerlach (Count VI). (*Id.*) Kaslyn further brought two indemnification claims against Yorkville based on his § 1983 claim against Officer Gerlach (Count VII) and Kaslyn's state law battery claim against her (Count VIII). Finally, Kaslyn brought a respondeat superior claim against Yorkville for Kaslyn's state law battery claim (Count IX). (*Id.*) Yorkville and Officer Gerlach ("Yorkville Defendants") and Officer Heye and Officer Slocum ("State Defendants") have filed motions for summary judgment on Counts I-IX. (Dkt. 83, Dkt. 86). For the reasons stated below, the Court grants the Yorkville and State Defendants' motions for summary judgment.

## BACKGROUND[1]

On July 2, 2021, Officer Slocum, while on patrol in Yorkville, pulled over a silver 2003 Subaru Baja ("Subaru") in a Jewel Osco ("Jewel") parking lot for improperly stopping at a red light. (Dkt. 89 at 2). Officer Heye arrived shortly thereafter as a backup officer for safety reasons. (*Id.*) When Officer Slocum asked the driver of the Subaru for his license and proof of insurance, a bag filled with cannabis fell out of the glove compartment. (*Id.*) Officer Slocum then informed the passengers that the police had to search them one at a time. (*Id.*)

Officer Slocum began to search the first individual as Kaslyn approached the active police stop. (*Id.*) Kaslyn had just left Jewel with his wife, Gabrielle Kaslyn ("Gabrielle"), when he saw the search taking place. (*Id.* at 3). As Kaslyn approached, he asked the members in the car if they were okay, and the male searched by Officer Slocum informed Kaslyn that the officers had "been nice." (*Id.*) When Officer Heye approached Kaslyn, Kaslyn began to shout vulgarities at him. (*Id.*) Officer Slocum then walked over to Kaslyn and asked him to stay back, to which Kaslyn responded by pulling out his phone and recording the officers present at the car stop. (*Id.*) Kaslyn informed the officers that he would not move back and continued to shout obscenities at them. (*Id.*) Officer Heye then told Kaslyn that he would go to jail for obstructing the police if he did not back up. (Dkt. 97, Ex. 7 at 0:03-0:07). Kaslyn once again refused to back up. (*Id.*) During this time, Officer Gerlach and a trainee arrived to help search the female members of the car. (Dkt. 89 at 2). Officer Slocum, once more, approached Kaslyn and asked him to move back. Kaslyn continued to ignore him. (Dkt. 97, Ex. 7 at 1:50-1:57).

---

[1] The Court draws most of the facts from Officer Slocum's dash camera, Kaslyn's cellphone video, and his wife's video. These videos provide the Court with sufficient footage to understand what took place during Kaslyn's arrest. *See Pryor v. Corrigan*, 124 F.4th 475, 490 (7th Cir. 2024) (holding the district court reasonably relied on video footage from the event because the plaintiff's "many claims [were] plainly portrayed, unobstructed and in their entirety, in one or both videos.").

Officer Slocum then told Kaslyn he was under arrest. (*Id.* at 1:59). As the officers began to arrest Kaslyn, he threw his cellphone and told his wife to record the entire interaction. (*Id.* at 2:00-2:08). Officer Slocum and Officer Heye then brought Kaslyn to the ground as he attempted to pull away from the arresting officers. (*Id.*) Once on the ground, Officer Gerlach walked over toward the other two officers and Kaslyn. (Dkt. 97, Ex. 6 at 9:11-9:19). Officer Gerlach then bent down to help the officers control the situation. (*Id.*) Kaslyn continued to resist arrest by trying to pull his arm away. (Dkt. 89, ¶ 23). The detainee's vehicle blocked the dash camera from recording the incident once the officers had taken Kaslyn to the ground, but Gabrielle's recording began approximately six seconds later. (*Id.* ¶ 20).

When Gabrielle's video begins, Kaslyn is on the ground, lying on his back. (Dkt. 97, Ex. 8, 0:00). The three officers crouched around Kaslyn; Officer Slocum was to his right, Officer Heye was to his left, and Officer Gerlach was next to Kaslyn's head. (*Id.*) The trainee stood above the three of them. (*Id.*) The officers then went to roll Kaslyn onto his side and attempted to grab his arms to place them in handcuffs. (*Id.* at 0:00-0:05). The officers successfully placed Kaslyn's arm behind his back. (*Id.*) During this time, Kaslyn remained turned over on his stomach. (*Id.* at 0:07-0:12). Officer Slocum, still on Kaslyn's right side, had both knees on the ground and one arm on Kaslyn's back. (*Id.*) Officer Heye, still on the left side of Kaslyn, had both knees on the ground, and at least one arm on Kaslyn. (*Id.*) Officer Gerlach had one knee on the ground, the other blocked by Officer Heye's body. (*Id.* at 0:12-0:16).

Gabrielle's camera went off Kaslyn for less than two seconds, and upon its return, the officers remained in practically the same positions. (*Id.* at 0:16-0:19). The officers, attempting to handcuff Kaslyn, still had their hands on his back. (*Id.* at 0:19-0:22). Once more, the camera steered away from Kaslyn, but the video returned to the ongoing arrest within six seconds. (*Id.* at 0:22-

0:28). When the video went back to Kaslyn, Officer Gerlach had stood up, Officer Heye no longer had any form of contact with Kaslyn, and Officer Slocum's hands remained on Kaslyn's back. (*Id.* at 0:28-0:30). Officer Slocum then helped Kaslyn, who he had successfully handcuffed, to his feet. (*Id.* at 0:30-0:35). The officers walked Kaslyn to the squad car and placed him inside. (Dkt. 89, ¶ 37).

**LEGAL STANDARD**

A court will grant summary judgment when no genuine dispute of material fact exists. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Hossfeld v. Allstate Ins. Co.*, 179 F.4th 1046, 1052 (7th Cir. 2026) (quoting *Christense v. Weiss*, 145 F.4th 743, 751 (7th Cir. 2025)). To survive at the motion for summary judgment stage, the nonmoving party must provide specific evidence illustrating a genuine issue of material fact exists. *Tech. Sec. Integration, Inc. v. EPI Techs., Inc.*, 126 F.4th 557, 560 (7th Cir. 2025).

Video footage plays a pivotal role in the outcome of this opinion, so the Court addresses the proper use of video evidence when ruling on motions for summary judgment upfront. *Pam v. City of Evansville*, 154 F.4th 523, 528 (7th Cir. 2025). At the summary judgment stage, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Mendez v. City of Chicago*, 160 F.4th 888, 892 (7th Cir. 2025) (quoting *Scott v. Harris*, 550 U.S. 372 (2007)). Courts can only "disbelieve the non-movant's presentation of the facts when the video utterly discredits that rendition of the facts." *Raddant v. Douglas Cnty., Wisconsin*, 170 F.4th 583, 591 (7th Cir. 2026) (cleaned up).

## DISCUSSION

### I. Officers Heye, Slocum, and Gerlach[2]

Kaslyn brought a § 1983 excessive force claim (Counts I, III, and V) and a state law battery claim (Counts II, IV, and VI) against Officers Heye, Slocum, and Gerlach. (Dkt 43). The Yorkville and State Defendants now seek summary judgment on all counts. (Dkt. 83, 86).[3] The Court grants their motions for the reasons below.

#### a. § 1983 Action (Count I, III, and V)

The Court's discussion only focuses on the officers' actions after they take Kaslyn to the ground as Kaslyn does not challenge the prior interactions, including the takedown itself. (Dkt. 100 at 1). Thus, the Court need not address any *Heck v. Humphry* concerns. *See Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019) (holding the *Heck* bar does not apply when plaintiff "does not deny that he tried to obstruct the police from maintaining custody after his arrest[,]" and "contends only that [the officer] used force that was unreasonable in relation to the nature of his obstruction[,]" since "[t]his contention [could] be resolved in [the plaintiff's] favor without casting any doubt on the validity of his conviction.").

Kaslyn claims the officers engaged in excessive force against him when they "choked" him and "smashed" his face against the ground. (Dkt. 43, ¶¶ 20-21). Officer Gerlach argues Kaslyn's claims fail because she used a reasonable amount of force when aiding in his arrest. (Dkt. 83, ¶ 7). Officers Slocum and Heye similarly argue they used "limited force" and that, in any event, qualified immunity bars Kaslyn's claim. (Dkt. 86, ¶ 5). Although the officers and Kaslyn have distinct characterizations of what took place, the video leaves nothing for dispute.

---

[2] The Court addresses Officers Heye, Slocum, and Gerlach's motions for summary judgment in one order as Kaslyn brings the same claims, based on the same facts, against all three officers.

[3] Officer Slocum and Officer Heye filed a motion for summary judgment, and Officer Gerlach and the City of Yorkville filed a motion for summary judgment. (Dkt. 83, Dkt. 86). As mentioned above, the Court addresses both motions together.

Courts analyze excessive force claims under the Fourth Amendment. *Jackson v. City of Madison*, 176 F.4th 1005, 1023 (7th Cir. 2026). To determine if an officer has used excessive force, Courts use a reasonableness standard, which asks "whether each use of force was reasonable under the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010)).

Looking at the totality of the circumstances, a reasonable jury could not find that the officers used excessive force. Once Officers Slocum and Heye took Kaslyn to the ground, he remained there for 41 seconds. (Dkt. 97, Ex. 6 at 9:14-9:55). Gabrielle's video captured the entire interaction between the officers and Kaslyn. While a few seconds of the video remain obstructed, the officers' body positions barely change when the video frame returned. *Raddant*, 170 F.4th at 593 (holding no excessive force even when the video footage becomes unclear for two seconds, creating uncertainty on when the officer grabbed the plaintiff's leg); *Pryor*, 124 F.4th at 483-84 (upholding district court's decision to grant motion for summary judgment even when "[t]he district court found that certain parts of the videos are susceptible to different interpretations (creating an issue of fact) or were unclear[] because most of the video depictions were clear.").

Nothing in the video indicates that any of the officers used excessive force to complete Kaslyn's arrest; in fact, they used minimal force. *Perez v. Guetschow*, 173 F.4th 862, 865 (7th Cir. 2026) ("Video evidence that conclusively shows what happened allows a court to set aside factual disputes and decide what clearly established rules of law govern."); *Johnson*, 944 F.3d at 969 (same). Once the officers had Kaslyn on the ground, they used their hands to hold Kaslyn down, roll him over, and place handcuffs on him. *Graham v. Connor*, 490 U.S 386, 396 (1989) ("Fourth

Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). The officers then helped Kaslyn to his feet. While the video loses sight of Kaslyn momentarily, the officers could not have possibly "choked" Kaslyn or "slammed" his head against the ground and returned to nearly identical body positions in the mere seconds in which Kaslyn's body disappears. The undisputed facts demonstrate that the officers used reasonable force to complete Kaslyn's arrest.

Because the officers' use of force was not unreasonable, they are entitled to qualified immunity.[4] To determine if qualified immunity applies, the Court first asks if the facts as described indicate a constitutional violation took place, and second, when the alleged violation took place, if the federal right at issue was "clearly established." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). The Court has discretion to address these two questions in either order, and if one yields a negative result, qualified immunity applies. *Id.*

Focusing on the latter, a plaintiff can prove the clear establishment of a right by "identifying 'a clearly analogous case establishing the right to be free from the conduct at issue' or by showing that the officers conduct 'was so egregious that no reasonable person could have believed that it would not violate established rights.'" *Estate of Thomson v. Behn*, 181 F.4th 724, 734 (7th Cir. 2026) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 508 (7th Cir. 2015)). Certainly, the Fourth Amendment protects an individual from having excessive force used against him during an arrest when that has been clearly established in the law. *Jackson*, 176 F.4th at 1024. Kaslyn does not

[4] Officer Gerlach did not raise the defense of qualified immunity in her motion for summary judgment. (Dkt. 83). The Court addresses it regardless as Officers Slocum and Heye raised qualified immunity as a defense. Because Kaslyn brings § 1983 claims against all three officers based on the same facts, his qualified immunity response to Officer Gerlach would rely on the same case he uses to refute the State Defendant's qualified immunity defense. (Dkt. 101).

benefit from the protection of the Fourth Amendment, however, as the officers did not use excessive force against him and he does not point to a clearly established right.

Here, Kaslyn attempts to defeat the officers' qualified immunity defense by citing to a ten-year-old district court case where a 190-pound, 6'1" male police officer held a 15-year-old, 5'4, 150-pound female high school student on the ground by holding her neck and digging his knee into her back for one minute. *See Boothe v. Wheeling Police Officer Sherman*, 190 F.Supp.3d 788 (N.D. Ill. June 3, 2016). The court in *Boothe* held that the officer's actions constituted excessive force. *Id.* at 799. *Boothe* differs from this case because the evidence here, provided by a clear video, shows no indication that any officer held Kaslyn's neck or dug his knee into Kaslyn's back. Kaslyn also did not encounter the same size difference with the officers as the plaintiff did in *Boothe*. The Court "underscore[s] the importance of locating factually analogous cases in the excessive force context because it is difficult for officers to determine how fact-dependent legal conclusions will apply to the specific scenarios they confront." *Pam v. City of Evansville*, 154 F.4th 523, 532 (7th Cir. 2025); *see also Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (police officers receive the protection of qualified immunity unless plaintiff points to precedent that "squarely governs" the specific facts before the court). Because material distinctions exist between the present case and *Boothe*, Kaslyn failed to refute the officers' qualified immunity defense.

The officers used a reasonable amount of force to carry out Kaslyn's arrest. *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011) (cleaned up) ("not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."). There is no evidence in the video that supports his allegation of having his head slammed into the ground and there is insufficient time for such an act to occur off video. The Court therefore grants

the Yorkville and State Defendants' motions for summary judgment with respect to Kaslyn's § 1983 excessive force claim.

**b. State Law Battery Claim (Count II, IV, and VI)**

Kaslyn also brought a state law battery claim against the officers. (Dkt. 43, ¶¶ 29-33). Kaslyn's state law battery claim rises and falls with his excessive force claim. In Illinois, "battery is the 'unauthorized touching' of another that 'offends a reasonable sense of personal dignity.'" *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008) (quoting *Cohen v. Smith*, 648 N.E.2d 329, 332 (1955)). If a plaintiff brings a battery claim against a police officer, the Illinois Tort Immunity Act requires the plaintiff establish the police officer acted with willful or wanton conduct. *Id.* at 692-93 ("[t]he Illinois Tort Immunity Act shields public employees from liability for actions committed 'in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.'") (quoting 745 Ill. Comp. Stat. 10/2–202).

The officers did not act with willful or wanton conduct for the same reasons they did not act unreasonably under the Fourth Amendment. *Mendez v. City of Chicago*, 160 F.4th 888, 892 (7th Cir. 2025) ("resolving [the plaintiff's] Fourth Amendment claim also resolves his pertinent state law claims."); *see also Ybarra v. City of Chicago*, 946 F.3d 975, 981 (7th Cir. 2020). Nothing in the video footage implies any of the officers acted with the intent to harm Kaslyn or with an "'utter indifference to or conscious disregard'" for his safety. *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008) (quoting *Breck v. Cortez*, 490 N.E.2d 88, 94 (1986)). As such, the Court grants the Yorkville and State Defendants' motions for summary judgment with respect to Kaslyn's state law battery claims.

**II. Defendant City of Yorkville (Count VII, VIII, and VX).**

Because the Court grants the Yorkville Defendant's motions for summary judgment with respect to Kaslyn's § 1983 excessive force and state law battery claims, Kaslyn's indemnification

and respondeat superior claims suffer the same fate. *Mendez*, 160 F.4th at 892 (recognizing the officer's "lack of liability causes the indemnification claim to fall away too."). The Court grants the Yorkville Defendant's motion for summary judgment with respect to Kaslyn's indemnification and respondeat superior claims.

## CONCLUSION

The Court GRANTS summary judgment in favor of the Yorkville and State Defendants. (Dkt. 83, Dkt. 86).

Virginia M. Kendall
United States District Judge

Date: September 30, 2026